**In re Kirk Gerald CHRISTIANSEN,**
**Debtor.**

No. 99–50897.

United States Bankruptcy Court,
W.D. Missouri,
St. Joseph Division.

July 25, 2000.

Mr. Peter A. Jouras, Jr., Fairway, KS, for debtor.

## MEMORANDUM OPINION AND ORDER

JERRY W. VENTERS, Bankruptcy Judge.

The United States Trustee ("Trustee") has filed a Motion to dismiss these Chapter 7 proceedings "for cause" pursuant to 11 U.S.C. § 707(a) of the Bankruptcy Code. The Court conducted a hearing on the Motion on July 13, 2000, at the Buchanan County Courthouse in St. Joseph, Missouri, at which the Trustee and the Debtor, Kirk Gerald Christiansen ("Debtor"), presented evidence. After consideration of the evidence and a review of the relevant law, the Court has determined that the Trustee has failed to prove cause for dismissal under the narrow dictates of § 707(a), and will therefore deny the Trustee's Motion.

This Court has jurisdiction over this matter under 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

## FACTUAL BACKGROUND AND FINDINGS

In September 1998, the Debtor underwent an elective cosmetic surgery procedure, during or after which the surgeon prescribed a pain medication that caused extensive bleeding and other complications, including temporarily disfiguring facial hemorrhaging and an inability to speak for two months. As a result, the Debtor was unable to work at his job as the finance manager for an automobile dealer and lost his job for approximately 5½ months spanning 1998 and 1999. During the time he was unable to work, the Debtor lived largely off his credit cards and accordingly accumulated a substantial amount of credit card debt. Although he was rehired in April 1999, the Debtor's income did not reach the levels he had achieved in the past, largely because fewer vehicle buyers financed their purchases through the dealership, according to the Debtor. Such financings affect the amount of commission income received by the Debtor. This led to the filing of the Debtor's Chapter 7 bankruptcy on November 22, 1999.

According to his statement of financial affairs, the Debtor had gross income of $82,000.00 in both 1997 and 1998. However, in 1999, the Debtor's gross employment income dropped to $77,493.00, and for the first six-plus months of 2000, his gross employment income was just $24,424.30 (through July 10, 2000), which would project to less than $50,000.00 a year.[1] In addition to his earned income in 1999, the Debtor cashed in an individual retirement account (IRA) of $15,954.00, which the Debtor used to pay his living expenses.

The Debtor was 38 years old (at the time of filing his bankruptcy), single, with no dependents. He is a college graduate and has worked as the finance director of

---

1. In addition to fewer buyers financing their vehicle purchases through the dealership, as noted earlier, the Debtor testified that his income in 2000 has declined as the result of a violent storm which damaged the car dealership earlier this year. The dealership was closed or hampered in its operations for a period of time as a result of the storm.

the auto dealership where he is presently employed since April 1996. He lives in a first-tier lakefront home at Lake Waukomis, Missouri, which he purchased three years ago for $120,000.00. He has valued the home, which has approximately 2,200 square feet, at $145,000.00 in his bankruptcy schedules, but there are two mortgages against the real property totaling approximately $170,000.00. The Debtor owns a 1997 BMW automobile having a scheduled value of $42,000.00 and a mortgage debt of $46,000.00.

In his Schedule J, the Debtor listed living expenses totaling $5,115.00 a month, which exceeded his net monthly income as shown on Schedule I by about $1,550.00 a month. The Trustee has pointed to some of these monthly expenses as excessive, such as $180.00 for telephone expense, $90.00 for cable services, $450.00 for food, $175.00 for laundry and cleaning, $300.00 for life insurance, $99.00 for a cell phone, $49.00 for haircuts, and $120.00 for housecleaning. At the hearing, the Debtor testified that, since filing bankruptcy and because of his reduced income, he has reduced many of these expenses. For instance, he testified that he terminated his life insurance to eliminate that $300.00 a month expense, he eats out less so as to reduce his food costs, he has reduced his laundry and cleaning expenses by approximately half, and he now has someone clean house for him only twice a month rather than four times a month, as he had done previously. So far in 2000, the Debtor has received $4,000.00 in salary advances from his employer to help him meet his living expenses.

## DISCUSSION

■ As previously noted, the Trustee seeks dismissal pursuant to 11 U.S.C. § 707(a), which provides:

§ 707. **Dismissal**

(a) The court may dismiss a case under this chapter only after notice and a hearing and only for cause, including—

(1) unreasonable delay by the debtor that is prejudicial to creditors;

(2) nonpayment of any fees or charges required under chapter 123 of title 28; and

(3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521, but only on a motion by the United States trustee.

11 U.S.C. § 707(a).

■ The statute does not define "cause." However, we do know that the three enumerated examples of cause are nonexclusive as indicated by the use of the introductory word "including." *See* 11 U.S.C. § 102(3) (" 'includes' and 'including' are not limiting"); *P.C. Pfeiffer Co. v. Ford*, 444 U.S. 69, 77 n. 7, 100 S.Ct. 328, 334 n. 7, 62 L.Ed.2d 225 (1979) ("including" means the enumerated items are part of a larger group).

The seminal case on the issue presented, and certainly the governing law in the Eighth Circuit, is the Eighth Circuit Court of Appeals' decision in *Huckfeldt v. Huckfeldt (In re Huckfeldt )*, 39 F.3d 829 (8th Cir.1994). In that case, the Eighth Circuit rejected the proposition that bad faith could be the basis for "cause" for dismissal under § 707(a), and instead adopted the "narrow, cautious" approach to the question taken by the Minnesota Bankruptcy Court in *In re Khan*, 172 B.R. 613 (Bankr. D.Minn.1994). The Eighth Circuit said:

Acknowledging that courts do have inherent power to sanction the bad faith litigant, *see Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–46, 111 S.Ct. 2123, 2132–33, 115 L.Ed.2d 27 (1991), the court in *Khan* urged that bad faith under § 707(a) be limited to extreme misconduct falling outside the purview of more specific Code provisions, such as using bankruptcy as a "scorched earth" tactic against a diligent creditor, or using

bankruptcy as a refuge from another court's jurisdiction. *Khan*, 172 B.R. at 624–26.[2]

We agree with the narrow, cautious approach to bad faith adopted in *Khan*. Congress has defined the ultimate issue in § 707(a) cases as whether the Chapter 7 petition should be dismissed "for cause." As this case illustrates, some conduct constituting cause to dismiss a Chapter 7 petition may readily be characterized as bad faith. But framing the issue in terms of bad faith may tend to misdirect the inquiry away from the fundamental principles and purposes of Chapter 7. Thus, we think the § 707(a) analysis is better conducted under the statutory standard, "for cause." If the bankruptcy court elects instead to act under the inherent judicial power to punish a bad faith litigant, that action should not be taken under § 707(a).

*Huckfeldt*, 39 F.3d at 832 (citations and footnotes included).

■ It is clear from a reading of *Huckfeldt* and *Khan* that some type of extremely serious misconduct must be shown in order to establish cause for dismissal under § 707(a). "[B]ad faith in the filing of a Chapter 7 petition would be evidenced by a pervasive and orchestrated effort on the part of the debtor to obtain the benefits of a bankruptcy filing while at the same time intentionally and fraudulently taking action to avoid any of the detriments." *Khan*, 172 B.R. at 625. Examples cited by *Khan* of such an improper effort might include filing a petition simply to obtain the protection of the § 362 automatic stay without accepting the duties and responsibilities of a debtor, or a vindictive motivation to use the bankruptcy solely as a "scorched earth" tactic against a pressing creditor or opponent in litigation. *Id.*

None of these elements is present in the case now before the Court. When boiled down to its bare essence, the Trustee's basis for "cause" for dismissal of this case seems to be that the Debtor is not "truly needy" because he had a high income prepetition and he has "disregarded his obligation to tighten his belt and continues to outspend his income." (Trustee's Motion, ¶ 13) Because the Debtor has not adequately reduced his expenses, as reflected on the bankruptcy schedules, so the Trustee's argument goes, the Debtor will emerge from bankruptcy immediately in debt to the extent of almost $18,000.00 a year (based on the deficit of about $1,550.00 a month shown on the Debtor's Schedule I).

There is no question that the Debtor enjoyed a very substantial income prepetition, and there is no arguing the fact that he lived beyond his means. That is not something unique to this bankrupt debtor; many people who find themselves in bankruptcy arrived there because they have lived beyond their means. The Debtor lives in a moderately expensive home that is amply spacious for one person, and that house is heavily overburdened with debt which the Debtor is still attempting to pay. He also drives an expensive car which, like his house, is overburdened with debt. Finally, the Debtor has, in the past, incurred monthly living expenses that would be unreasonable but for the fact that he was earning in the range of $80,000.00 to $90,000.00 a year. The Debtor testified, however, that he has reduced his living expenses post-petition to bring them more in line with his reduced income.

But all of that is far from enough to find "cause" for dismissal of the Debtor's Chapter 7 bankruptcy. And, in fact, the evidence demonstrates there is some reason-

---

**2.** The court's approach in *Khan* is consistent with that urged in 4 Collier on Bankruptcy ¶ 707.03, at 707–10–11 (15th Ed.1992):

Bad faith may be found when the debtor has a frivolous, noneconomic motive for filing a bankruptcy petition, when there is a sinister or unworthy purpose, or when there is an abuse of the judicial process. That the debtor is merely taking advantage of its legal rights is not, by itself, sufficient to support a finding of bad faith.

able justification for the Debtor's filing. The Debtor underwent surgery in 1998, and the apparent negligence of the doctor caused serious complications that made it impossible for the Debtor to perform his work and resulted in his losing his job for a period of 5½ months.[3] The Court would infer from the Debtor's testimony and his schedules that a substantial portion of the $105,000.00 in listed credit card debt was incurred while the Debtor was out of work and was, most likely, trying to maintain basically the same standard of living he had enjoyed prior to that time. It is also noteworthy that there are no medical bills listed on the bankruptcy schedules, and it could well be that some of those bills were paid with credit cards. Finally, the Debtor testified that in 1999 he had an infestation of carpenter ants in his house and that it cost him $9,000.00 to eradicate them and make necessary repairs. In summary, it appears to the Court that the bankruptcy filing was brought about, at least in substantial part, by forces and events beyond the Debtor's control, and was not the result of any serious or sinister misconduct by the Debtor.

Moreover, it would be improper to consider the Debtor's financial means in considering dismissal for cause under § 707(a). "In passing on a motion for dismissal under § 707(a), then, the Bankruptcy Court should exclude any consideration that goes to the debtor's financial means." *Khan*, 172 B.R. at 624. According to the Court of Appeals, the legislative history of § 707(a) supports a finding that the section does not contemplate that the ability of the debtor to repay his debts (in whole or in part) would constitute adequate cause for dismissal. *Huckfeldt*, 39 F.3d at 831.

At the same time, the Trustee has not shown that the Debtor had an ulterior or vindictive motive for filing bankruptcy, or that the filing was undertaken as a "scorched earth" tactic against a pressing creditor or opponent in litigation. The bankruptcy schedules list no suits filed or pending against the Debtor in the last year prior to filing, and no garnishments or seizures of property are reflected in the schedules. There have been no motions for relief filed by the secured creditors in this case, although one credit card company did file a dischargeability action, which the Debtor settled for $1,000.00.

In summary, it appears that the bankruptcy was not filed by the Debtor for any improper purposes, as set out by the courts in *Huckfeldt* and *Khan*, and the Trustee has failed to show any extreme or serious misconduct that would warrant dismissal of this case for cause.

Therefore, it is

**ORDERED** that the United States Trustee's Motion to Dismiss these Chapter 7 proceedings pursuant to 11 U.S.C. § 707(a) be and is hereby DENIED.

**SO ORDERED.**

---

3. The Debtor listed the potential medical malpractice claim in his bankruptcy schedules. However, subsequent investigation by the attorney retained to represent the Debtor on that claim has led to a conclusion that the action is not worth pursuing. That investiga-tion, according to the Debtor, has disclosed that the doctor did not have malpractice insurance to cover this incident and that the doctor has filed bankruptcy himself and has no assets from which a judgment against him might be satisfied.